IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASTRIEN JOHNSON and JESSICA TERRIQUEZ as next friend of the minor J.T., | ) ) ) | |
| Plaintiffs, | ) ) | Case No.  21-CV-4378 |
| v. | ) ) | Judge Robert W. Gettleman |
| ILLINOIS STATE POLICE SERGEANT RAYMOND KURUT, Star No. 6064, ILLINOIS STATE POLICE TROOPERS KENNY, Star No. 6061, PAGLIARO, Star No. 6159, G. LIKOURESIS, Star No. 5101, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Astrien Johnson ("Johnson") and Jessica Terriquez, as next friend of the minor J.T., bring a two-count complaint against defendants Illinois State Police ("ISP") Sergeant Raymond Kurut ("Kurut") and ISP Troopers Kenny, Pagliaro, and Likouresis (collectively, "defendants").  In Count I, Johnson alleges wrongful detention under the Fourth Amendment and failure to protect pursuant to 42 U.S.C. § 1983, and in Count II, J.T. alleges the same.  On November 18, 2022, defendants filed a motion for summary judgment on both counts pursuant to Federal Rule of Civil Procedure 56(a) (Doc. 41).  For the reasons discussed below, the court grants defendants' motion on both counts.

## BACKGROUND

Shortly before 5:00 a.m. on Saturday, August 25, 2019, defendant Pagliaro responded to a call indicating that a vehicle was stopped in a lane of traffic on an I-294 exit ramp.  He approached the vehicle and observed plaintiff Johnson slumped over the steering wheel, with

plaintiff J.T., Johnson's 14-year-old niece, asleep in the front passenger seat. In his deposition testimony, Pagliaro stated that the vehicle was "stalled" and "disabled" at this time, although defendant Kurut recalls that Pagliaro told him that Pagliaro found the transmission in drive. In any case, defendants Kenny, Kurut, and Likouresis arrived on the scene shortly after Pagliaro. The parties dispute whether Pagliaro or Kurut woke Johnson up. According to Kurut, who is a certified Drug Recognition Expert ("DRE"), he awoke Johnson to find that her pupils were constricted, her speech was slurred, and she had difficulty keeping her eyes open. He asked her to step out of the vehicle, and as she did so, Kurut recalls seeing several prescription bottles fall out of Johnson's purse. Kurut contends that one of those prescriptions was for hydrocodone, which is a narcotic analgesic.

Kurut testified that he then administered various standardized field sobriety tests. According to Kurut, he administered the horizontal gaze nystagmus ("HGN") test using indirect light from his flashlight, which he pointed at Johnson's chest. He stated that Johnson did not exhibit signs of nystagmus, or involuntary jerking of the eyes, although not all categories of drugs, like narcotic analgesics, cause nystagmus. Kurut also testified that he administered the one-leg-stand test, which Johnson failed, and the walk-and-turn test, which she also failed. His testimony matches the ISP Field Report, which Kurut completed.

Johnson does not dispute that she failed the walk-and-turn test, but she disputes other aspects of this encounter. According to Johnson, she was driving with J.T., who had fallen asleep in the car, following dinner and an evening working as an Uber driver. In her deposition, Johnson testified that she was not drinking or otherwise under the influence, but she took daily prescription medications for a recent knee injury. Johnson was prescribed two pills per day of hydrocodone, which she generally cut in half to spread out to four times a day. Moreover, five

2

days before the encounter at issue, Johnson suffered a concussion from falling and hitting her head after her knee snapped, and she was prescribed medication for ongoing concussion-related symptoms, including intense migraines.

On the way home, Johnson testified that she "suddenly felt the onset of a terrible migraine," leading her to pull off the highway at the nearest exit with the intent to park. At the stoplight at the exit, Johnson testified that she became dizzy and began to see spots, and she reached for her phone to call emergency services. According to Johnson, she passed out before she was able to dial, and she awoke to a "loud, aggressive" banging on her car window. Johnson disputes Kurut's assertions that her pupils were constricted, her speech was slurred, and she had difficulty keeping her eyes open at that time. She testified that Kurut conducted only one field sobriety test: the walk-and-turn, which she explained that she failed because her fall led to a fresh, bloody knee injury, which prohibited her from standing or walking properly. Johnson denies that prescription bottles fell out of her purse when she opened the door because she keeps all pill bottles in a Ziploc bag in her purse, which she stated that Kurut did not search until they arrived at the squad room.

At 5:29 a.m., Kurut arrested Johnson for driving under the influence ("DUI"). According to Kurut, he based his decision to arrest Johnson on the following factors: her performance on the field sobriety tests, her constricted pupils and slurred speech, and his determinations that her vehicle's engine was on, the transmission was in drive, she was slumped over the steering wheel, it took some time to wake her up, and she was confused regarding why she was in the roadway. Johnson contests Kurut's interpretation of the scene, and none of the other defendants (Kenny, Likouresis, or Pagliaro) recalled one way or the other during their depositions, even though Kurut testified that he based his evaluation on certain observations that Pagliaro relayed to him.

In her deposition, Johnson testified that she informed Kurut of her medical condition prior to his evaluation and asked him for an ambulance at the scene, in addition to offering him her medical papers, which contained an order for a CAT scan for her concussion and a referral to an orthopedic surgeon for her knee.

Kurut and an unidentified officer escorted Johnson and J.T. to the M1 squad room in separate cruisers. At the squad room, Johnson was processed for DUI after receiving her Miranda rights. Kurut administered a variety of sobriety tests, including a breathalyzer, and the HGN, walk-and-turn, one-leg-stand, Modified Romberg Balance, and finger-to-nose tests. Johnson's blood alcohol content was .000. She failed only the one-leg stand, which Johnson testified that she failed because of her knee injury. Kurut reviewed Johnson's medical paperwork and counted the pills in her prescription hydrocodone bottle; according to plaintiffs, all expected pills were present in the bottle. At the end of the evaluation, Kurut determined that Johnson was not under the influence of drugs or alcohol. Kurut voided her arrest at 6:51 a.m., and Johnson refused medical treatment after paramedics evaluated her. Kurut issued Johnson a ticket for stopping in a no-standing zone and released her without a DUI charge.

The officers also released J.T., and an unidentified officer drove them to a gas station for a relative to pick them up. J.T. was never formally charged, and she was never handcuffed or placed into a cell. It is ISP policy to take temporary protective custody of a dependent minor and "notify the parent/guardian of the minor's location." J.T. waited with Johnson while Johnson completed the sobriety tests, and she never asked to call her parents, nor did she call them on her own cell phone, which was out of charge at the time.

There is no dashboard camera video recording of the instant traffic stop because it was not retained in the system. Kurut labeled the ISP Field report as a "medical" report, and it is not

4

ISP policy to retain footage of medical reports beyond 90 days. Defendants further dispute that video footage of voided arrests must be retained for even 90 days. There is, however, video footage of Johnson's evaluation at the squad room. In this video, Johnson is not easy to hear on the microphone, but Kurut's voice is plainly audible, and he never expressly indicates that Johnson is slurring her words or otherwise indicates that she is intoxicated.

Plaintiffs claim that they were unlawfully seized because Kurut lacked probable cause to believe that they committed a crime, and that the other officers (Kenny, Pagliaro, and Likouresis) failed to protect them from Kurut's unlawful actions despite the reasonable ability to do so. Plaintiffs provide evidence suggesting that Kurut has a potential bias against African Americans, and they suggest that his behavior was motivated by bias, rather than probable cause. For example, Kurut was suspended for 25 days because he used racial slurs against an African American trooper while on-duty and in his capacity as an officer. In addition, Kurut explicitly stated to an African American trooper that he "hate[s] all black people" except that trooper, among other examples of discriminatory actions toward African American troopers.

Defendant Kurut counters that there was probable cause to seize and detain plaintiffs, and that even if there was not probable cause, he is entitled to qualified immunity. Defendants Kenny, Likouresis, and Pagliaro testified that they were not personally involved in plaintiffs' detainment. Kenny and Likouresis stated that they handled traffic control, and Pagliaro does not recall driving plaintiffs to the squad room or otherwise interacting with plaintiffs after initially arriving on the scene.[1]

**LEGAL STANDARD**

---

[1] Plaintiffs claim that it is "likely" that Kenny drove J.T. to the squad room and to the gas station, "which inherently constitutes interaction." Because Kenny could not recall whether he drove J.T. in his cruiser, plaintiffs have provided no affirmative evidence that he did so; rather, they provide mere speculation.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to show that there is no genuine dispute of material fact preventing the entry of judgment in its favor as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Supreme Court has determined that a fact is "material" when it may affect the outcome of the suit under the governing law and the dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court's function is limited to determining whether the parties have provided sufficient evidence to support a factual dispute that warrants submission to a jury for resolution at trial. See id. at 249. The court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Defendants move for summary judgment on both counts because they argue that Kurut had probable cause to arrest Johnson. They argue that probable cause justifies Kurut's decision to arrest Johnson, and his decision to take custody over J.T., which was incidental to Johnson's lawful arrest. According to defendants, no reasonable jury could find otherwise based on the evidence, and the court agrees. No reasonable jury could find that Johnson was subject to an

unlawful seizure because plaintiffs have not provided affirmative evidence to defeat defendants' properly supported assertion of probable cause.

The court begins by evaluating defendants' burden to establish probable cause to arrest, which is an absolute defense to a wrongful arrest claim under the Fourth Amendment.[2]  See Potts v. City of Lafayette, 121 F.3d 1106, 1113 (7th Cir. 1997).  An officer has probable cause to seize (i.e., arrest or detain) an individual if the facts and circumstances within the officer's knowledge are sufficient to permit a prudent person to believe that the suspect has committed or is committing an offense.  See Coleman v. City of Peoria, 935 F.3d 336, 350 (7th Cir. 2019).  This is a low threshold that is based on an objective evaluation of the totality of the evidence at the time.  See Norris v. Serrato, 761 Fed. App'x 612, 615 (7th Cir. 2019).  It is not based on an officer's subjective reasons for making the arrest.  See Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 679 (7th Cir. 2007).

Generally, juries determine whether an arrest was supported by probable cause, but if the underlying facts are undisputed, the court can enter summary judgment on probable cause as a matter of law.  See Abbott v. Sangamon County, Ill., 705 F.3d 706, 714 (7th Cir. 2013).  For example, in Williams v. Vasquez, 62 F. App'x 686 (7th Cir. 2003), the court evaluated probable cause to arrest after the plaintiff lost consciousness while driving, causing his car to cross the center lane and damage parking meters on the other side of the street.  Id. at 687.  When the officer arrived at the scene, he testified that he observed that the plaintiff was unable to walk without support, had red eyes, and smelled of alcohol.  Id.  According to the officer, the plaintiff

---

[2] To recover for a constitutional violation under 42 U.S.C. § 1983, a plaintiff must show: (1) that the plaintiff was deprived of a right secured by the Constitution or laws of the United States; and (2) that such deprivation was visited upon them by a person or persons acting under color of state law.  See McKinney v. Duplain, 463 F.3d 679, 683 (7th Cir. 2006).  To recover in the instant case, plaintiffs must show that defendants deprived them of their right to be free from unreasonable seizure under the Fourth Amendment.  U.S. Const. Am. IV.  A seizure, such as an arrest, is reasonable when the officers have probable cause.  See Devenpeck v. Alford, 543 U.S. 146, 152 (2004).

failed several field sobriety tests. Id. The plaintiff, however, disputed the officer's recollections and testified that he had not been drinking on the day of the accident, that he pulled himself out of the car without assistance, that he was able to walk with his cane, and that he was neither offered nor failed any field sobriety tests. Id. The officer ultimately arrested the plaintiff, and the plaintiff was found guilty at trial of failing to stay in the proper lane, although he was acquitted of the DUI charge. Id.

The plaintiff subsequently claimed that he was falsely arrested because his immobility was not sufficient, standing alone, to justify an arrest for DUI.[3] Id. The district court agreed but entered summary judgment for the officer because it determined that the officer was entitled to qualified immunity. Id. at 688–89. On appeal, the Seventh Circuit agreed with the district court that the officer lacked probable cause to believe that the plaintiff was intoxicated while driving, and consequently lacked probable cause to arrest him for DUI. Id. at 690. On the other hand, the court determined that the officer undisputedly had probable cause to believe that the plaintiff had committed other traffic violations, including improper lane usage. Id. The court explained that arrests for minor offenses, even if punishable only by fine, do not violate the Fourth Amendment, citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Id. The court concluded that the officer did not violate the Fourth Amendment when he arrested the plaintiff for improper lane usage, among other traffic violations, even if he did not have probable cause to arrest for DUI. Id. See also Jackson v. Parker, 627 F.3d 634, 638–39 (7th Cir. 2010); Williams v. Rodriguez, 509 F.3d 393, 399 (7th Cir. 2007).

Similarly, in the instant case, Kurut testified that he based his decision to arrest Johnson

---

[3] The plaintiff also argued that his allegedly false arrest for DUI could not be justified based on his lawful arrest for failure to stay in the proper lane because "it was not closely related to the charge of DUI." Id. at 688. The court rejected this argument based on precedent. Id. at 691, n. 6.

on the following factors: her performance on the field sobriety tests, her constricted pupils and slurred speech, and his determinations that her vehicle's engine was on, the transmission was in drive, she was slumped over the steering wheel, it took some time to wake her up, and she was confused regarding why she was in the roadway. Johnson counters that her poor performance on the field sobriety tests was due to her medical condition, which she argues that Kurut was aware of. She provides medical reports, her own testimony, and video footage in support of this argument.[4] Defendants do not dispute this evidence; instead, they argue that there is other evidence, like Kurut's deposition testimony and the police report, which indicate that there were "clues of impairment" beyond the disputed field tests.

In truth, Johnson's alleged "clues of impairment," including her performance on the field sobriety test(s), are largely irrelevant because it is undisputed that Johnson was found slumped over the wheel in the roadway on an early Saturday morning, with her niece asleep next to her. Plaintiffs do not dispute Johnson's ticket for stopping in a no-standing zone, and this traffic violation alone is enough to establish probable cause under Atwater. As discussed above, probable cause insulates Kurut from liability under § 1983 for falsely arresting Johnson as a matter of law.[5]

It is notable that the Williams court rejected the plaintiff's argument that a jury could determine that the plaintiff suffered a constitutional injury under § 1983 based on timing and delay. The plaintiff argued that "had he simply been charged for the [traffic violations], the booking time for the arrest would have been shorter and the ensuing legal process would have

---

[4] According to plaintiff, video footage in the squad room demonstrates Kurut's awareness of her medical condition because it shows Kurut handling Johnson's medical papers, suggesting that he had earlier access to them.

[5] To the extent that plaintiffs argue that Kurut unlawfully investigated Johnson for DUI when there was a plausible medical explanation, defendants counter that there is not a clearly established right to be free from DUI investigation if one has a medical condition. The court agrees.

been more streamlined." Id. at 691–92.  The court rejected this argument because it determined

that there was "simply no evidence in the record to establish that the DUI charge resulted in a

longer initial detention, more extensive judicial involvement, or more delays." Id. at 692.  The

court explained that "[t]he burden was on [the plaintiff] to bring forth such evidence, and without

such evidence, his claim [could not] stand." Id.  Likewise, in the instant case, plaintiff Johnson

does not provide affirmative evidence to meet this burden or, as a threshold matter, even argues

that she has done so.

Further, the court rejects plaintiffs' argument that Kurut's motivation in arresting Johnson

would impact whether a reasonable jury could find that Kurut lacked probable cause.  Even if

Kurut's subjective motivation for arresting Johnson was racial animus against African

Americans, subjective motivations are irrelevant to a reasonable jury's objective probable cause

assessment.  The Seventh Circuit's reasoning in Williams v. Vasquez is again instructive.  In

Williams, the court determined that, even if the officer's "real reason" for arrest was his

unsupported belief that the plaintiff was driving under the influence, the constitutional

reasonableness of the plaintiff's arrest did not depend on the officer's "actual intent" or

"subjective motivation," so long as there was objective probable cause to believe that the

plaintiff committed a traffic violation.  62 Fed. App'x 686, 690–91 (7th Cir. 2003).  The court

relied on Whren v. United States, 517 U.S. 806 (1996), in which the Supreme Court determined

that it "[n]ot only [has] never held, outside the context of inventory search or administrative

inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the

Fourth Amendment; but [it has] repeatedly held and asserted the contrary." Id. at 812.

Because the court determines that no reasonable jury could find that defendant Kurut

lacked probable cause to arrest plaintiff, the court does not need to determine whether Kurut is

entitled to qualified immunity for arresting Johnson. The doctrine of qualified immunity protects government officials from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). Courts do not grant qualified immunity where there are material issues in dispute regarding the officer's alleged constitutional violation, including instances where the parties dispute the officer's awareness of certain facts at the time of arrest. See Wilbon v. Plovanich, 67 F. Supp. 3d 927, 939 (N.D. Ill. 2014). The court agrees with plaintiffs that they raise a genuine dispute regarding a variety of factors that impacted Kurut's evaluation of Johnson's alleged intoxication at the time of arrest, but these disputed facts do not diminish the undisputed facts that Johnson was unconscious in her vehicle in a lane of traffic and that she failed the walk-and-turn field sobriety test, for whatever reason.[6]

Next, plaintiffs correctly argue that, should the court determine that no reasonable jury could find that Kurut lacked probable cause to arrest Johnson (as it does here), this conclusion does not mean that a reasonable jury could not find that Kurut lacked probable cause to detain J.T. It is undisputed that Kurut's decision to exercise temporary protective custody over J.T. was incidental to Johnson's arrest, but plaintiffs emphasize that defendants violated ISP policy when they failed to notify her parents that she was in custody. Defendants dispute that J.T.'s parents were never contacted, although they acknowledge that ISP policy requires them to notify a minor's parents when they take that minor into protective custody. Defendants add that Kurut had an affirmative duty to take J.T. into custody instead of leaving her alone in a vehicle on the roadway. See White v. Rochford, 592 F.2d 381, 383 (7th Cir. 1979) (concluding that it is a constitutional violation when defendant officers leave minors in a vehicle on the side of the road

---

[6] Due to this conclusion, the court does not need to determine whether certain pieces of evidence would be admissible, such as Kurut's recollection of Pagliaro's statements to him when he arrived on the scene.

after arresting and removing the adult driver).

The court agrees that temporary custody was reasonable in this case, and is not persuaded by plaintiffs' argument otherwise. Primarily, the court is not convinced that the violation of an internal police department policy requiring officers to notify J.T.'s parents entitles plaintiff J.T. to constitutional relief. For example, in Hurem v. Quadri, No. 11 C 1418, 2013 WL 2636626 (N.D. Ill. June 12, 2013), aff'd sub nom. Hurem v. Tavares, 793 F.3d 742 (7th Cir. 2015), the court determined that a "failure to act in accordance with duties defined by the City Municipal Code does not dictate relief by this Court." Id. at *8. The Hurem court explained that violations of the city code, like violations of state law, are not necessarily violations of the U.S. Constitution, especially where the state or municipality enacts stricter protections than federal law. Id. This court concludes that defendants' violation of a state police directive is analogous to the Hurem defendants' violation of the city municipal code; while a violation of ISP policy is certainly a problematic occurrence, plaintiffs have not provided affirmative evidence to allow a reasonable jury to find that such violation entitles J.T. to constitutional relief under § 1983. The court rejects plaintiffs' concerns regarding defendants' failure to retain dashboard camera video footage for the same reason.

Plaintiffs' last argument is that they are entitled to constitutional relief under § 1983 because the other defendant officers (Kenny, Likouresis, and Pagliaro) failed to protect plaintiffs from Kurut's unlawful seizure, which violated their due process rights. Under the failure to protect doctrine, the general rule is that a state's failure to protect an individual against private violence is not a violation of the due process clause. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). As a preliminary matter, the court is not convinced that the failure to protect doctrine is an appropriate avenue for relief in this case. This doctrine

imposes an affirmative duty on law enforcement officers to protect seized individuals from private harm; in this case, plaintiffs complain of unlawful action by public officers, making the failure to protect doctrine an imperfect fit.

The Supreme Court, however, has recognized limited exceptions to the general failure to protect rule, such as the "special relationship" exception. See First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago, 988 F.3d 978 (7th Cir.), cert. denied sub nom. First Midwest Bank v. City of Chicago, 211 L. Ed. 2d 207 (2021). The special relationship exception places an affirmative duty on the state to provide for the safety of a person whom it has taken into its custody involuntarily. Id. at 988. The reason for this obligation is that a person involuntarily in custody is unable to care for herself or seek alternative avenues of aid. Id.

Another exception to the general rule in the failure to protect doctrine is the state-created danger exception. This exception protects victims where the state takes affirmative steps that subject the victim to harm or increase the victim's vulnerability to harm. See Bostic v. Vasquez, No. 2:15-CV-429-JPK, 2023 WL 356841, at *8 (N.D. Ind. Jan. 23, 2023). To prevail under the state-created danger exception, a plaintiff must show: (1) that the state, by its affirmative acts, created or increased the plaintiff's danger; (2) that the state's failure to protect the plaintiff from danger was the proximate cause of her injury; and (3) that the state's failure to protect the plaintiff shocks the conscience. See D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015).

Assuming that the failure to protect doctrine contemplates protection from harm by public officials under § 1983 (and the court is not convinced that it does), the court concludes that neither exception applies in this case. Here, plaintiffs have not provided affirmative evidence to suggest that defendants Kenny, Likouresis, and Pagliaro subjected plaintiffs to any

13

harm by failing to intervene while Kurut seized them. As discussed above, no reasonable jury could find that Kurut lacked probable cause to seize plaintiffs, and consequently, such a jury could not find that Kurut harmed plaintiffs by unlawful seizure. Without an underlying constitutional violation by Kurut, plaintiffs have no constitutional claim against Kenny, Likouresis, or Pagliaro for failure to protect them from unconstitutional arrest.[7] Thus, the court makes no determination whether these officers were sufficiently personally involved in plaintiffs' arrests to be liable under § 1983, or whether their failure to involve themselves more fully in the arrest "shocks the conscience."

## CONCLUSION

For the reasons set forth above, the court grants defendants' motion for summary judgment (Doc. 41) on both counts.


ENTER:


Robert W. Gettleman
**United States District Judge**

**DATE: March 8, 2023**

---

[7] The court agrees with defendants that plaintiffs merge the failure to protect doctrine with the failure to intervene doctrine. The failure to intervene doctrine imposes liability on an officer when the officer does not intervene to prevent other officers from infringing the constitutional rights of citizens. An officer may be liable if that officer had reason to know that a citizen was unjustifiably arrested, or that any constitutional violation was committed by an officer; and if that officer had a realistic opportunity to intervene to prevent the harm from occurring. See Chavez v. Illinois State Police, 251 F.3d 612, 652 (7th Cir. 2001). Because the failure to intervene doctrine also requires an underlying constitutional violation, plaintiffs' merger of the doctrines does not impact the court's conclusion on defendants' motion.

14